**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ANDRES HOLDING CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-127-XR |
| | § | |
| VILLAJE DEL RIO, LTD., ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | | |
| GEORGE GEIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-268-XR |
| | § | |
| ANDRES HOLDING CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this date, the Court considered George Geis' Motion for Summary Judgment (Docket Entry No. 54), Villaje del Rio, Ltd.'s Motion for Partial Summary Judgment (Docket Entry No. 55), and Andres Holding Corporation's Motion for Summary Judgment (Docket Entry No. 56).  For the following reasons, Geis' motion and Villaje del Rio's motion (Docket Entry Nos. 54 and 55) are GRANTED IN PART and DENIED IN PART.  Andres Holding Corporation's motion (Docket Entry No. 56) is DENIED.

## Factual Background

Defendant George Geis is the owner of the Rio Architects company, the design architect on a multi-million dollar residential, commercial, and retail development construction project known as the Villaje Del Rio Project ("the Project").  Geis later founded Defendant Villaje Management, L.L.C. (VM), the general partner of Defendant Villaje Del Rio, Ltd. (VDR), which was created to develop and construct the Project.  Geis financed the Project through a Deed of Trust Note ("the Note") provided by DB Berkshire Mortgage (DBBM).  VDR entered into a Construction Contract - Cost Plus ("the Contract") on February 13, 2003 with Plaintiff Andres Holding, designating Andres Holding as the general contractor for the project.

The Contract and incorporated Project Manual provided that Andres was to submit monthly "Contractors Requisition" forms ("Pay Requisitions") in order to obtain payment.  The amount of payment under each Pay Requisition was dependent on the percentage of completion of the project, calculated by Andres and based on the amounts provided in the Schedule of Values.  Andres began submitting Pay Requisitions in April 2003.

After receiving a Pay Requisition, Geis would submit an Application for Insurance for Advance of Proceeds in order to receive funding from DBBM.  DBBM would advance the proceeds and increase the amount owed by Geis on the Note.  At times, advances were made directly to Andres.  As of Pay Requisition number 11 on February 2, 2004, the advances were made to Alamo Title Company as Title Agent, and disbursed pursuant to the February 13, 2003 "Construction Loan Disbursement Agreement."

VDR terminated the Contract with Andres Holding in late October 2004.  Disputes over performance, payment, and termination of the Contract give rise to these consolidated lawsuits.

2

## Procedural Background

The VDR project has resulted in numerous lawsuits in both state and federal court.  On October 29, 2004, VDR filed a demand for arbitration against Andres before the American Arbitration Association ("AAA"), and shortly thereafter, Andres filed counterclaims against VDR, VM, and Geis.  Due to a number of factors, the arbitration was delayed for several years.

In October 25, 2005, Andres filed an action in the 45th District Court of Bexar County, Texas against VDR ("the state lawsuit"), and added Geis by filing its First Amended Petition on November 1, 2007.  While Andres' state court lawsuit was pending, DBBM declared its loan to VDR in default.  Colina del Rio, LP ("Colina") purchased the loan.  Colina filed suit in the 408th Judicial District Court for Bexar County, Texas, asserting fraud and breach of contract claims against Geis ("the Colina lawsuit").[1]

On May 1, 2006, VDR filed a voluntary Chapter 11 petition, and the matter was later converted to a Chapter 7 liquidation.  On May 2, 2007, Andres purchased all tort and non-tort claims that could have been asserted by VDR against Andres.  Colina purchased all of VDR's claims "not sounding in tort" against Geis.  On April 29, 2008, the bankruptcy court authorized an assignment of Chapter 5 bankruptcy claims against Andres, with 90% of the recovery from any lawsuit to go to Geis and the remaining 10% to the VDR bankruptcy estate.  Geis then filed his Original Complaint and Incorporated Objection to Claim asserting claims of fraudulent transfer and conveyances against Andres under § 548 of the Bankruptcy Code and Chapter 24 of the Texas Business & Commercial Code.

On October 13, 2008, Geis removed Andres' state lawsuit to federal bankruptcy court, the

---

[1] *See George Geis d/b/a/ Rio Architects v. Colina del Rio, LP,* No. 04-09-00465-CV (Tex. App.–San Antonio Jul. 21, 2010).

bankruptcy reference was withdrawn, and Case No. 09-CV-127 was filed in this Court.[2]  Andres

asserts fraud claims against VDR arising out of the construction contract, and breach of contract

claims against Geis and VM under an alter ego theory.  Geis then filed a separate action in this

Court against Andres, Case No. 09-CV-268, asserting claims that Andres received fraudulent

transfers violating the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and received

payments for over-billing, double billing, and work that was not performed.[3]

VDR filed a motion to consolidate the two cases as well as a separate case filed by VDR

against Colina and DBBM.[4]  Andres filed a motion to compel Geis and VDR to the pending

arbitration before the AAA.[5]  On July 24, 2009, this Court denied Andres' motion to compel

arbitration, consolidated cases No. 09-CV-127 and No. 09-CV-268, and denied VDR's motion to

include its separate lawsuit against VDR and DBBM in the consolidation.[6]

On September 30, 2010, this Court denied a motion by Andres for leave to amend its

---

[2]Order Withdrawing Reference, Feb. 24, 2009 (Docket Entry No. 2).

[3]*See* Geis' Second Amended Complaint and Incorporated Objection to Claim, Dec. 30, 2009 (Docket Entry No. 29).  Geis also sought to consolidate a third case, No. SA-07-CA-947-XR, filed by VDR against Colina del Rio (CDR) and DB Berkshire Mortgage (DBBM), which provided financing for the project,

[4]Motion for Consolidation, Jun. 10, 2009 (Docket Entry No. 7).

[5]Motion to Compel Geis and VM to Arbitration, Jul. 6, 2009 (Docket Entry No. 9).

[6]Order Denying Motion to Compel Arbiration, Jul. 24, 2009 (Docket Entry No. 15); Order Granting in Part and Denying in Part Motion to Consolidate Cases, Jul. 24, 2009 (Docket Entry No. 16).  In Case No. 07-CV-947, VDR asserted claims against Colina and DBBM for tortious interference, economic coercion, and recovery under the Texas Uniform Fraudulent Transfer Act for DBBM's funding of the overpayments, double payments, and improper payments to Andres.  The Court denied the motion for consolidation of that case, which was ultimately dismissed by stipulation of the parties.  Order Dismissing Case with Prejudice, Nov. 30, 2009 (Case No. SA-07-CA-947, Docket Entry No. 120).

4

complaint based on the factual findings of the state court in the Colina lawsuit against Geis and VDR.[7]

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  A fact is "material" if its resolution in favor of one party might affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice.  *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).  The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings.  *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).

---

[7]Ord. on Pl.'s Mot. for Leave to File Am. Compl., Oct. 19, 2010 (Docket Entry No. 51).

The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

### Pending Claims

Andres alleges that Geis "implemented a scheme to reengineer, redesign, and redistribute the work and loan proceeds" in order to make the VDR project financially feasible.[8]  It argues that Geis consistently attempted to reduce the payments due to both Andres and its subcontractors, and failed to pay millions of dollars to Andres and its subcontractors.[9]  It further alleges that Geis withheld retainage from Andres and its subcontractors, and that Andres furnished materials and equipment for the Project.  Andres also alleges that Geis failed to pay its management fee.  Based upon those allegations, Andres asserts the following claims against VDR, VM, and Geis:

1.    Piercing the corporate veil to hold Geis accountable for the actions of VDR and VM;

2.    Breach of contract by failure to remit payments due, failure to pay Andres a construction fee, systematically delaying Andres' and its subcontractors' ability to satisfy their contractual obligations, and wrongful termination of the contract;

3.    Tortious interference with Andres' existing contractual relations with subcontractors;

4.    Tortious interference with Andres' prospective contractual relations with subcontractors;

5.    Fraud and fraudulent inducement by misrepresenting before entering the contract that VDR would rely on an amended schedule of values for the contract and misrepresenting that VDR would sign a side agreement to cover Andres' contractor fee;

---

[8]Andres' Second Am. Compl. at 3.

[9]*Id.*

6

6.      Attorneys' fees;

7.      Pre- and post-judgment interest.

Geis and VM allege that the amount of work that Andres stated was completed was inaccurate on a line item level and in total on each pay requisition submitted between January 2004 and October 2004.[10]  They also allege that Andres received double payment for certain items, and received payment for several items which were improperly categorized as "extras."[11]  They allege that these payments rendered VDR insolvent and without sufficient funds to complete the Project and make payments to its creditors.  Accordingly, Geis and VM assert the following claims against VDR:

1.      Fraudulent conveyance in violation of 11 U.S.C. § 548, by causing VDR to transfer amounts for which Andres did not provide reasonably equivalent value;

2.      Fraudulent transfer in violation of Chapter 24 of the Texas Business and Commercial Code by causing VDR to transfer amounts for which Andres did not provide reasonably equivalent value;

3.      Objection to Andres' Proof of Claim No. 7 in the VDR bankruptcy proceeding; and

4.      Attorneys' fees and costs.

---

[10]Geis' Second Am. Compl. at 3-4.

[11]*Id.* at 4.

**Analysis**

## I.  PIERCING THE CORPORATE VEIL

Andres seeks to pierce the corporate veil in order to hold Geis and VM accountable for the actions of VDR.  Geis[12] moves for summary judgment on the basis that there is no genuine issue of material fact suggesting that he should be liable on any claim for any actions taken by VDR.[13]  He argues that this issue was resolved by the Court's Order denying Andres' motion to compel arbitration, and that Geis has no individual liability because he did not enter into any contract with Andres, and he acted solely as VDR's agent.[14]

In a July 24, 2009 Order, this Court denied Andres' motion to compel Geis and VM to arbitration.[15]  The Order held that Andres had not submitted sufficient evidence to prove that Geis and VM were alter egos of VDR such that they should be bound by the arbitration clause in VDR's contract with Andres.[16]  Geis argues that this Court is bound by the law of the case doctrine to grant summary judgment that Andres cannot pierce the corporate veil to hold Geis and VM accountable for VDR's actions.[17]  Alternatively, he argues that the Court should take

---

[12]VM's Motion for Partial Summary Judgment incorporates Geis' Motion for Partial Summary Judgment in all relevant parts.  Accordingly, unless otherwise noted, the Court's references to and discussion of "Geis" apply equally to the motions of both Geis and VM.

[13]Geis' Mot. at 7-10.

[14]*Id.*

[15]Order Denying Mot. to Compel to Arb. at 5.

[16]*Id.* at 5-7.

[17]Geis' Mot. at 8.

judicial notice of its prior ruling.[18]

The law of the case doctrine provides that when a "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Op. Corp.,* 486 U.S. 800, 815-816 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 608 (1983)). The law of the case doctrine is discretionary; it does not strictly prohibit a court from reconsidering its prior findings. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1321-1322 (5th Cir. 1989). The doctrine "directs a district court's discretion, it does not limit the tribunal's power." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir. 2010) (quoting *Arizona v. California*, 460 U.S. at 618).

The Court's decision with regard to the motion to compel turned on the fact that Andres failed to provide any evidence at that time to support its assertions that "the actions of VDR and VM at issue in the arbitration were the actions of Geis himself."[19] At the time, Andres only had proof that Geis created VDR, set up VM as VDR's general partner, and that Geis was the sole manager and shareholder of VM.[20] He was unable to present any proof of any of the other alter ego factors.[21] Geis argues that any attempt to compel arbitration "would require *some* evidence,"[22] and thus Andres should not be allowed to present more evidence at the summary judgment stage on the veil-piercing issue. He argues that for the Court to now find that Geis and

---

[18]*Id*. at 7-8.

[19]Order Denying Mot. to Compel to Arb. at 7.

[20]*Id*. at 6-7.

[21]*Id.*

[22]Geis' Reply to Andres' Resp. to Geis' Mot. at 13.

VM may be liable for VDR's actions on an alter ego theory would "throw the initial determination on arbitration into a quagmire."[23]

The Court is not bound by the law of the case doctrine on this issue.  The question of whether to pierce the veil to compel Geis to the contract's arbitration clause is a distinct question from that of Geis' alter ego liability for the substantive allegations against VDR.  Furthermore, availability of evidence regarding the relationship between Geis and VDR has substantially increased now that the parties have completed discovery.  The Court specifically stated in its prior Order that "without further proof as to the other factors," the Court could not bind Geis or VM to the arbitration clause.[24]  The parties have now conducted discovery and Andres has presented further evidence to supports its alter ego theory.  On a motion for summary judgment, the moving party has the burden of proving that, based on the discovery and other evidence on file, there is no genuine issue of fact sufficient to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247; *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d at 860.  To hold Andres to the level of evidence that it was able to present nearly a year and a half ago, before discovery had been conducted, would be unfair in light of his summary judgment burden, especially if there is now "substantially different" evidence.  *See U.S. v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

Under Texas law, the corporate veil may be pierced in three circumstances: "(1) the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud."  *Fidelity & Deposit Cor.*

---

[23]*Id.* at 13.

[24]*Id.* at 7.

*of Maryland v. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 274-75 (5th Cir. 1992) (*citing*

*Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1131-32 (5th Cir. 1988); *Castleberry*

*v. Branscum,* 721 S.W.2d 270, 272-73 (Tex. 1986)).  Andres claims that the veil should be

pierced based on the alter ego theory, alleging that Geis created VDR and VM "for the sole

purpose of insulating himself from personal liability in connection with his ownership of the

Project."[25]

      Alter ego liability may be imposed when "there is such unity between a corporation and

an individual that the separateness of the corporation has ceased and holding only the corporation

liable would result in injustice."  *Carone v. Retamco Operating, Inc.,* 138 S.W.3d 1, 13

(Tex.App.-San Antonio 2004, pet. denied) (citing *Castleberry,* 721 S.W.2d at 272).  The factors

considered to determine whether an alter ego exists are: (1) commingling of debts or payment of

alleged corporate debts with personal funds, (2) representations that the individual will

financially back the corporation, (3) diversion of company profits to the individual for personal

use, (4) inadequate capitalization, and (5) failure to otherwise keep corporate and personal assets

separate.  *Carone*, 138 S.W.3d at 12-13.  Failure to observe corporate formalities is no longer

considered a factor in analyzing alter ego.  *Id.;Farr v. Sun World Sav. Ass'n,* 810 S.W.2d 294,

296 (Tex.App.-El Paso 1991, no writ); TEX. REV. CIV. STAT. ANN. art 2.21(A)(2) (overruling

*Castleberry*).

      Geis argues that Andres has presented no proof that Geis should be individually liable on

an alter ego theory, as opposed to solely acting in his capacity as VDR's agent.[26]  He argues that

---

[25]Andres' Second Am. Compl. at 8.

[26]Geis' Mot. for Partial Summ. J. at 9-10.

Andres cannot pierce the corporate veil because it has provided no evidence that Geis perpetrated any fraud through the VDR entities.[27] This argument ignores that fraud is only one circumstance that will lead to piercing the corporate veil, and the alter ego theory does not require proof of fraud. *See Fidelity & Deposit*, 976 F.2d at 274-75; *Castleberry,* 721 S.W.2d at 272-73; *Carone*, 138 S.W.3d at 12-13.

There is sufficient evidence before the Court to establish a genuine issue of material fact on the first alter ego factor, commingling of debts or payments between corporate and personal funds, and the fifth factor, failure to keep corporate and personal assets separate. *See Carone*, 138 S.W.3d at 12-13. Andres has provided a number of exhibits and deposition excerpts which suggest that Geis may have intentionally commingled his personal funds with VDR funds and the funds of other entities, or at least failed to keep the various accounts separate.[28] In addition to the financial relationship between Geis and VDR, Andres has also provided evidence of transactions involving the accounts of Goldbrick, Inc., a company that performed some work on the VDR Project; The Exchange, a shopping center personally owned by Geis; the Riverfront property, a separate property owned by Geis and adjacent to VDR;and several other accounts for VDR, for personal expenses, and for other properties owned by Geis.[29] All of these accounts were personally owned by Geis except for the VDR account.[30] Geis admitted that he "never paid a

---

[27]Geis' Reply to Andres' Resp. to Geis' Mot. at 14-15.

[28]*See* Summary of Transactions [Exhibit A, pp. 1-5 of Appendix to Andres' Resp. to Geis' Mot.].

[29]*See id.;see* Deposition of George Geis 21-49, Nov. 16, 2010 [Exhibit B-1, pp. 18-25 of Appendix to Andres' Resp. to Geis' Mot.].

[30]Geis Deposition 35:13-36:7 [p. 21 of Appendix to Andres' Resp. to Geis' Mot.].

whole lot of attention to" whether certain accounts were set up as business accounts or personal accounts.[31]

Several of the transactions identified by Andres also evidence the third factor of alter ego liability, diversion of corporate profits for individual use.  *See Carone*, 138 S.W.3d at 12-13. There is evidence of several payments from VDR's account to Geis' personal account or the accounts of other entities that he owned personally.[32]  In some cases Geis was able to articulate a VDR-related reason for these payments, but in others he was unable to explain or recall the purpose of the payments.[33]

Furthermore, Andres has submitted evidence to create an issue of material fact with regard to the second alter ego factor, that Geis made representations that he would, individually, financially back the VDR project.  *See Carone*, 138 S.W.3d at 12-13.  In the Third Amended Disclosure Statement for the Debtor's Third Plan of Reorganization, filed by VDR in conjunction with its bankruptcy proceedings, Geis made several representations that he would provide cash payments and other funding for VDR, including legal fees for ongoing litigation involving VDR.[34]

Andres has not moved for summary judgment that Geis is subject to alter ego liability for VDR's actions, and Geis has not fully briefed the alter ego basis for piercing the corporate veil

---

[31]Geis Deposition 32:10-33:5 [pp. 20-21 of Appendix to Andres' Resp. to Geis' Mot.].

[32]*See* Summary of Transactions [Exhibit A, pp. 1-5 of Appendix to Andres' Resp. to Geis' Mot.].

[33]*Id.*

[34]Third Amended Disclosure Statement for the Debtor's Third Amended Plan of Reorganization, *In re Villaje del Rio, Ltd.*, Case No. 06-50797 (Chapter 11), Dec. 18, 2006 [Exhibit 62, pp. 252-278 of Appendix to Andres' Resp. to Geis' Mot.].

Given the evidence presented on commingling of funds, diversion of profits for personal use, and representations that Geis would individually back the VDR project, the Court concludes that there is a genuine issue of material fact as to whether Geis can be held liable for VDR's actions on an alter ego theory.  Geis' motion for summary judgment on this claim is therefore DENIED.

## II.  STATUTE OF LIMITATIONS ON ANDRES' INTERFERENCE CLAIMS

Geis argues that Andres' claims for tortious interference with existing and prospective contractual relations are barred by a two-year statute of limitations.[35]  He argues that the last day to file such claims was October 26, 2006, because Andres was terminated and stopped working on the Project on October 26, 2004.[36]  Geis also argues that Andres' claims for fraud and fraudulent inducement are barred by a four year statute of limitations.[37]  He argues that the alleged fraud must have occurred prior to the Contract being terminated in February 2003, such that the claims therefore expired in February 2007.[38]  Geis argues that none of the tort claims claims were properly filed against him until November 2007, after both statutes of limitations had expired, when Andres' Amended Petition added him as a party.[39]

Andres argues that, because it now asserts alter ego claims against Geis, the statute of limitations was tolled by the claims it filed against VDR on October 25, 2005.[40]  Andres' October

_____

[35]Geis' Mot. for Partial Summ. J. 6, Oct. 29, 2010 (Docket Entry No. 54).

[36]*Id.* at 6-7.

[37]*Id.* at 7.

[38]*Id.*

[39]*Id.*

[40]Andres' Resp. to Geis' Mot. at 4-5.  Andres also argues that Geis is bound to a Rule 11 Agreement signed by his counsel, providing that Andres' claims would not be time-barred.  *Id.* at

25, 2005 state court petition sought to foreclose on its statutory and constitutional liens on the

Property, based on the failure of VDR and VM to pay the amount alleged to be due and owing to

Andres under the Contract and other agreements for its work on the Property.[41]  The petition did

not allege fraud, fraudulent inducement, or tortious interference.[42]  Andres filed an amended

petition on November 1, 2007, adding Geis as a party, and adding claims for breach of contract,

tortious interference with existing and prospective contractual relations, and piercing the

corporate veil.[43]

A claim filed against a corporation tolls the statute of limitations as to that same claim

against the corporation's alter ego.  *Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694

(Tex. 1990); *Harwood Tire-Arlington, Inc. v. Young*, 963 S.W.2d 881, 888 (Tex.App.-Fort

Worth 1998, pet. dism'd by agr.); *Nelson v. Schanzer*, 788 S.W. 2d 81, 86 (Tex.App.-Hous. [14th

Dist.] 1990, writ den'd).  "Two parties in an alter ego relationship are regarded as identical for

the purposes of determining whether a suit is barred by limitations.  *Harwood Tire-Arlington*,

963 S.W.2d at 888.  The statute of limitations on Andres' tort claims against Geis would

therefore be tolled by the assertion of those claims against VDR.

The October 25, 2005 petition, however, did not assert any tort claims, but rather only

sought to foreclose on Andres' lien on the Property.  Geis argues that the fraud and tortious

---

2-4.  The Court has resolved the limitations issues on other grounds, and therefore does rely on
the content or validity of that agreement.

[41]Pl.'s Orig. Pet. 6, Cause No. 2005 CI 17047 (45th Dist. Court of Bexar County Oct. 25,
2005) (Exhibit C-8 to Geis' Reply to Andres' Resp. to Geis' Mot.).

[42]*See id.*

[43]Pl.'s First Am. Pet., Cause No. 2005 CI 17047 (45th Dist. Court of Bexar County Nov.
1, 2007) (Exhibit C-9 to Geis' Reply to Andres' Resp. to Geis' Mot.).

interference claims cannot relate back to that petition because they do not arise from the lien that was the subject of that action.[44]

>Under Texas law,
>
> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRACTICE & REMEDIES CODE § 16.068.

Relation back depends on "whether the cause of action alleged in the amended petition is wholly based upon and grows out of a new, distinct, or different transaction or occurrence." *Daybreak Exp., Inc. v. Lexington Ins. Co.*, ___ S.W.3d ___, 2011 WL 81301 at *7 (Tex.App.-Houston [14th Dist.] 2011, _____ (quoting *Meisler v. Republic of Tex. Sav. Ass'n,* 758 S.W.2d 878, 881 (Tex.App.-Houston [14th Dist.] 1988, no writ)).  New causes of action may be added and are considered to relate back to the original pleading "unless they arise from a wholly different transaction." *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex.App.-Hous. [1st Dist.] 1990, writ den'd) (citing *Providence Hosp. v. Truly,* 611 S.W.2d 127, 133-34 (Tex.Civ.App.-Waco 1980, writ dism'd)); *Meisler,* 758 S.W.2d at 882.  A claim does not relate back, however, if it is based on a different transaction that is only "loosely derivative of the same occurrence and transaction." *Duzich v. Marine Office of America Corp.*, 980 S.W.2d 857, 873 (Tex.App.-Corpus Christi 1998, pet. den'd).

Andres' original petition alleged that VDR "wrongfully and without justification terminated the Contract" or alternatively "terminated the Contract for convenience," and that

---

[44]Geis' Reply to Andres' Resp. to Geis' Mot. at 9.

Andres had not been fully paid for the "services, labor, materials, and equipment" it provided for the Project.[45]  The petition also alleged that Geis had "undertaken a Project that he ultimately [could] not afford to build," "implemented a scheme to reengineer, redesign, and redistribute the work and loan proceeds on the Project in order to make it financially feasible," "consistently attempted to reduce the payments due and owing to Andres," and "failed to pay millions of dollars due Andres and its subcontractors."[46]  Each of these allegations arises out of the contract between VDR and Andres, including Geis' conduct during the performance of the contract, Geis' alleged ongoing scheme to avoid paying Andres all the fees to which it believed it was entitled, and the ultimate cancellation of the contract and termination of Andres.

Andres' tort claims all arise out of the same contract and alleged conduct relating thereto. The fraud and fraudulent inducement claims are based on representations allegedly made by Geis that caused Andres to enter the contract.[47]  They arise out of alleged statements regarding the amount that Andres would be able to charge and to recover for its work under the contract, both in terms of the line items for services to be performed as well as an alleged side agreement for a contractor's fee.[48]  The tortious interference claims allege that Geis interfered with Andres' relations with its contractors during the performance of the contract, and allegations that Geis discouraged subcontractors from signing Andres' form subcontract which would have protected

---

[45]*Id.*

[46]*Id.* at 4.

[47]Andres' Second Am. Compl. at 8-9.

[48]*Id.*

Andres' rights in the event of a breach by Geis, VM, or VDR.[49]

None of the tort claims arise from a "wholly different transaction" as the contract giving rise to the foreclosure action on Andres' mechanic's lien.  *See Stevenson v. Koutzarov*, 795 S.W.2d at 319.  Geis does not assert that Andres' breach of contract claims are barred by any statute of limitations, and it would be illogical to find that these closely related tort claims are barred  Accordingly, Andres' claims for fraud, fraudulent inducement, and tortious interference with existing and prospective contractual relations are not barred by the applicable statutes of limitations.  Summary judgment is DENIED to Geis on these claims.

## III.  ANDRES' FRAUD CLAIMS

### A.  The Contract's Merger Clause

Geis argues that Andres' fraud claims are based on representations made before the parties executed the Contract, and the Contract's merger clause forbids the enforcement of any promises made prior to its execution.[50]  A merger clause does not bar claims of fraud or fraudulent inducement unless it "clearly expresses the parties' intent to waive fraudulent inducement claims, or...disclaims reliance on representations about specific matters in dispute." *Dunbar Medical Systems, Inc. v. Gammex Inc.*, 216 F.3d 441, 449 (5th Cir. 2000) (quoting *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 179-80 (Tex. 1997)).

The Contract in this case states: "This Contract constitutes the entire agreement between the parties, and any previously existing contract concerning the work contemplated by the

---

[49]*Id*. at 6-7.

[50]Geis' Mot. at 11-13.

Contract Documents is hereby revoked."[51]  This clause only negates any prior contractual

agreement between the parties regarding the work provided in the Contract.  It neither expressly

waives fraudulent inducement claims nor disclaims reliance on any specific matters in dispute.

*See Dunbar Medical*, 216 F.3d at 449; *Schlumberger*, 959 S.W.2d at 181.  Accordingly, the

merger clause does not bar Andres' fraud and fraudulent inducement claims.

**B.  Fraud Claims Must be Plead with Particularity**

Geis argues that Andres did not meet the heightened pleading standard for fraud claims

set by FED. R. CIV. P. 9(b).[52]  The Rule requires that a party "state with particularity the

circumstances constituting fraud. . ."  FED. R. CIV. P. 9(b).  A plaintiff must plead the "time,

place and contents of the false representations, as well as the identity of the person making the

representations and what [that person] obtained thereby."  *Williams v. WMX Technologies, Inc.,*

112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d

1061, 1068 (5th Cir. 1994)).  Rule 9(b) requires that the pleading include the "who, what when,

where, and how" of the alleged fraudulent statement.  *Williams,* 112 F.3d at 179 (quoting *Melder*

*v. Morris,* 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)).  These requirements provide fair notice to the

defendant of the plaintiff's claim, protect the defendant from harm to his reputation and

goodwill, reduce strike suits, and prevent plaintiffs from "filing baseless claims and then

attempting to discover unknown wrongs."  *In re Baker Hughes Securities Litigation*, 136

F.Supp.2d 630, 637 (S.D. Tex. 2001) (citing *Melder,* 27 F.3d at 1100).

A plaintiff need only generally allege"[m]alice, intent, knowledge, and other conditions

---

[51]Construction Contract Cost Plus Art. 1 § A, Feb. 13, 2003 (Exhibit A-1 to Geis' Mot. for Summ. J.).

[52]Geis' Mot. at 11-13.

of [the defendant's] mind." FED. R. CIV. P. 9(b). Pleading scienter, however, requires "more than a simple allegation that a defendant had fraudulent intent"; the pleading must "set forth specific facts that support an inference of fraud." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (*citing Tuchman,* 14 F.3d at 1068); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008). Fraudulent intent can be inferred by alleging facts that show the defendant's motive to commit the alleged fraud, or that identify circumstances that indicate conscious behavior on the part of the defendant. *Dorsey*, 540 F.3d at 339. Fraud may be pled based on information and belief if the facts are "peculiarly within the opposing party's knowledge." *Id.*

Andres' complaint asserts its first fraud claim with the following allegations:

> Geis assured Wade Andres at the closing that he understood that the figures in the schedule of values did not accurately reflect Andres' estimate of the costs to build the project on a line item basis. Geis further assured Wade Andres that he would change the schedule of values to reflect the actual estimated costs to build the project on the line item basis after the closing. . . Geis ultimately used the excuse that Andres was overdrawn as the justification for terminating Andres. . .[53]

The complaint also alleges a second fraud claim, that "[a]t and prior to the closing, Geis assured Andres that he would enter" a side agreement to cover Andres' fee (i.e. Andres' profit) in accordance with standard practice because HUD will not ensure a general contractor's profit on a HUD-insured job.[54] Andres asserts that Geis "ultimately wrongfully terminated Andres as part of his scheme to avoid paying any profit to Andres."[55]

With regard to both claims, Andres alleged the identity of the person making the

---

[53]Andres' Second Am. Compl. at 8-9.

[54]*Id.* at 9.

[55]*Id.*

representations, George Geis, and the contents of the representations.  The time and place

identified by Andres is "at the closing" and "at and prior to the closing.  Andres correctly states

that the closing is a particular time and place, but this allegation is still insufficient to fulfill the

"where", "when", and "how" of the alleged fraud.  Andres' complaint generally alleges that some

statements were made at some time during the closing and prior thereto, but does not provide any

particularity with regard to the form.  These allegations are not enough to put Geis "on notice as

to which of [his] assertions are challenged." *Williams,* 112 F.3d at 180.

Furthermore, Andres fails to meet the scienter pleading requirement.  Andres merely

states that Geis made the statements "with the intent for Andres to rely" on them.[56]  It alleges no

facts to indicate that Geis consciously intended to induce Andres' conduct based on false

statements.  The complaint merely states that at some point, Geis made certain representations of

conditions, and at another point, the contract was signed which reflected different conditions.

Andres alleges no facts with regard to Geis' state of mind that would separate Geis' statements

from any comments or proposed promises made in the course of contract negotiation.

Accordingly, Andres did not plead this claims with sufficient particularity to satisfy the

requirements of FED. R. CIV. P. 9(b), and summary judgment is GRANTED to Geis on this claim.

## IV.  ANDRES' BREACH OF CONTRACT CLAIMS

Geis moves for summary judgment on Andres' breach of contract claims on the basis that

Geis did not individually enter into any valid, enforceable agreement with Andres.[57]  If the Court

determines that Geis is ultimately liable for VDR's actions on an alter ego theory, this would

[56]*Id.*

[57]Geis' Mot. at 10.

subject Geis to liability for the breach of contract claims.  As the Court has denied summary

judgment to Geis on the issue of alter ego liability, Geis' motion for summary judgment on these

claims is also DENIED.

**V.  GEIS' FRAUDULENT CONVEYANCE CLAIMS (11 U.S.C. § 548 and Texas Business and Commercial Code §§ 24.005 and 24.006)**

Geis, on behalf of the Chapter 7 Trustee for VDR, files a claim under 11 U.S.C. § 548.

This provision provides that a trustee may avoid any transfer of a debtor's interest in the

property, or any obligation incurred by the debtor, made on or within 2 years before the date the

petition was filed, if the debtor "received less than a reasonably equivalent value in exchange for

such transfer or obligation."  11 U.S.C. § 248(a)(1)(B)(I).  Geis also brings a claim pursuant to 11

U.S.C. § 544(b)(1), the so-called "strong-arm statute,"[58] that the alleged fraudulent transfers were

in violation of the Texas Uniform Fraudulent Transfers Act (TUFTA).

TUFTA provides that

A transfer made...by a debtor is fraudulent as to a creditor, whether the creditor's

claim arose before or within a reasonable time after the transfer was made...if the

debtor made the transfer or incurred the obligation. . .

(2)  without receiving a reasonably equivalent value in exchange for the transfer..,

and the debtor: . . .

(B) intended to incur, or believed or reasonably should have believed that the

debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. COMM. CODE § 24.005.  The Texas Code also provides that

---

[58]11 U.S.C. § 544(b)(1) provides that a "trustee may avoid any transfer of an interest of
the debtor in property or any obligation incurred by the debtor that is voidable under applicable
law..."

A transfer made...by a debtor is fraudulent as to a creditor whose claim arose

before the transfer was made...if the debtor made the transfer...without receiving a

reasonably equivalent value in exchange for the transfer...and the debtor was

insolvent at that time or the debtor became insolvent as a result of the transfer . . .

TEX. BUS. COMM. CODE § 24.006.

Geis alleges that VDR made $2,806,763.00 in transfers to Andres for less than reasonably equivalent value, and that at the time VDR was insolvent or rendered insolvent by the transfers.[59] He alleges that these transfers were fraudulent conveyances as defined by 11 U.S.C. §548, and TEX. BUS. COMM. CODE §§ 24.005 and 24.006.  He requests that the transfers be set aside and that judgment be entered for the transferred amount.

**A.  Reach Back Period and Statute of Limitations**

Andres argues that some of Geis' fraudulent conveyance claims are barred by the statutory reach back period and the statute of limitations.[60]  It argues that 11 U.S.C. § 548 limits Geis to avoiding those transfers which were "made or incurred on or within 2 years before the date of the filing of the [bankruptcy] petition," which it calculates to May 1, 2004.[61]  On the TUFTA claims, Andres argues that Geis is limited to "four years after the transfer was made or the obligation was incurred,"[62] which it calculates as April 30, 2004.[63]  Thus, it argues that Geis

---

[59]Geis' Second Am. Compl. ¶ 16.

[60]Andres' Mot. at 28-30.

[61]*Id.* at 28.

[62]*Id.* at 29.

[63]*Id.* at 29.

is precluded from challenging overpayments relating to Pay Requisitions 10-13 (totaling $981,886.00) and the December 9, 2003 insurance payment ($84,648.00).[64]

Geis argues that the claims are not barred because he initially raised them as a counterclaim in his Answer, and they are a continuation of the claims raised in his objection to Andres' claims, filed December 13, 2006.[65]  Andres argues that the claims were not initially raised until Geis filed his complaint filed on April 30, 2008 in the bankruptcy case.[66]

**1.  11 U.S.C. § 248 Reach Back Period**

The terms of 11 U.S.C. § 548 provide that only transfers made on or within two years before the filing of the bankruptcy petition may be avoided.  Geis has provided no authority that the statutory reach back period is subject to tolling.  Summary judgment is therefore GRANTED IN PART on the claims under 11 U.S.C. § 248 relating to transfers made after May 1, 2004.  Geis is limited to avoiding only those transfers made on or before May 1, 2004.

**2.  TUFTA Statute of Repose**

TUFTA's limitations provision is technically a statute of repose, and is intended to be strictly construed.  *Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex.App.-Austin 2004, *no pet.*).  As opposed to a statute of limitations, which limits the availability of a remedy for a cause of action, a statute of repose bars the right to bring the cause of action altogether.  *Id.* (citing *Duran v. Henderson*, 71 S.W.3d 833, 837 (Tex.App.-Texarkana 2002, *pet. denied*).

---

[64]*Id*. at 29-30.

[65]*See* Debtor's Am. Objection to the Claim of Andres Holding Corporation (Claim No. 7), Dec. 13, 2006 (Case No. 06-50797-RBK, Docket Entry No. 154).

[66]Pl.'s Orig. Compl. and Incorporated Objection to Claim, Apr. 30, 2008 (Case No. 06-50797-RBK, Docket Entry No. 430).

A handful of courts have held that 11 U.S.C. § 546 "preempts" state statutes of repose, in particular TUFTA § 24.010, with regard to claims brought by a bankruptcy trustee pursuant to 11 U.S.C. § 544.  *See e.g., Smith v. American Founders Financial, Corp.,* 365 B.R. 647, 677-79 (S.D. Tex. 2007); *In re Princeton-New York Investments, Inc.*, 219 B.R. 55, 65 (B.A.P.D.N.J. 1998); *see also Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 519-20 (5th Cir. 2009) (distinguishing *American Founders,* which involved state law cause of action resulting from bankruptcy, from case involving federal cause of action independent of bankruptcy).  These courts reasoned that "[s]tate avoidance actions do not present 'countervailing state interest[s] which would outweigh the fulfillment of congressional goals.'"  *American Founders,* 365 B.R. at 679 (quoting *In re Princeton*, 199 B.R. at 297).  Thus, they hold that if state law claims are viable as of the beginning of the bankruptcy proceeding, the trustee has two years from that date to assert those claims pursuant to the 11 U.S.C. § 544 strong-arm statute.  In the absence of precedent to the contrary, the Court finds this reasoning compelling, especially in light of the fact that both parties in this case are asserting various claims arising out of these same transfers and transactions.

Here, Geis brings his TUFTA claims pursuant to the 11 U.S.C. § 544 strong-arm statute. Under the *Smith* reasoning, then, these claims must have been viable as of the May 1, 2006 initiation of the Villaje del Rio bankruptcy proceeding, limiting him to challenge transfers on or after May 1, 2002.  *See Smith*, 365 B.R. at 679 (citing *Cadle Co.*, 136 S.W.3d at 350).  Each of the challenged Pay Requisitions Nos. 10-18 falls within this time period.[67]  Pursuant to 11 U.S.C. § 546(a), Geis then had two years from that date until May 1, 2008, to bring the claims.  *Smith*,

---

[67]*See* Exhibit B to Geis' Second Am. Compl.

365 B.R. at 679.  Geis filed his original complaint on April 30, 2008, just within the two year

limitation period.  Accordingly, Geis' TUFTA claims are not precluded by the statute of repose.

## B.  Andres as Trustee of Funds

Andres argues that, pursuant to Chapter 162 of the Texas Property Code, it was only a

trustee for the funds it received, because it lacked dominion or control over the payments.[68]

Thus, it claims that it cannot be subject to avoidance, because the funds were not "transferred" to

it within the meaning of the Code.  It argues that it only received the payments for subsequent

distribution to subcontractors and suppliers on the project.[69]  Geis argues that Andres was a

transferee, because it had unrestricted control over the funds it received.[70]

A transferee subject to avoidance under 11 U.S.C. § 548 must have unfettered control

over the funds allegedly transferred to it.  *In re Southmark Corp.*, 95 F.3d 53, 1996 WL 459958,

*4 (5th Cir. 1996).  State law fraudulent transfer claims are subject to the same "transferee"

analysis as federal avoidance actions.  *Newsome v. Charter Bank Colonia*, 940 S.W.2d 157, 165

(Tex. App. - Houston [14th Dist.] 1996, *writ denied*).  A recipient of funds is not a transferee, for

example, if it holds the funds only in a fiduciary capacity, and has "no legal right to put the funds

to its own use."  *Id.* (quoting *Security First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138,

141 (5th Cir. 1993)).  However, "complete legal title," "indicia of ownership," "unfettered

discretion" to pay creditors, and lack of any "agreement . . . restricting . . . access to or use of the

funds" weigh in favor of finding transferee status.  *Id.* (quoting *Southmark Corp. v. Grosz (In re*

---

[68]Andres' Mot. at 15-18.

[69]*Id.*

[70]Geis' Resp. at 10.

*Southmark Corp.*), 49 F.3d 1111, 1114-1116 (5th Cir. 1995)).

Andres has provided no evidence to suggest that it lacked unfettered control over the funds received as payments on the contract.  The Texas Property Code itself contemplates a cause of action for fraudulently transferring or diverting funds held by a "trustee" under the meaning of the Code.[71]  There is no reason to conclude that such a "trustee" does not have control or discretion over the use of the funds.  Andres has provided no evidence that it lacked ownership or legal title over the funds, or that it was subject to any agreement restricting the use of the funds with regard to its subcontractors.  Accordingly, there remains a fact issue as to Andres' control, and thus as to whether the transfers may be avoided.

## C.  Factual Disputes on the Merits

Geis claims that many of the payments made to Andres were fraudulent because Andres did not provide "reasonably equivalent value for the monetary transfers it received.[72]  Andres moves for summary judgment on the basis that it did provide "reasonably equivalent value," providing evidence that (1) it did not receive all of the money drawn under the construction loan;[73] (2) Geis, his architect, the HUD inspector, and DBBM each approved all of the payments, thus "independently establishing" that the Project received reasonably equivalent value;[74] (3)

---

[71]Tex. Prop. Code § 162.005(1) ("a trustee acts with 'intent to defraud' when the trustee: (A) retains, uses disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds; (B) retains, uses disburses, or diverts trust funds and fails to establish or maintain a construction account...; or (C) uses, disburses, or diverts trust funds that were paid to the trustee in reliance on an affidavit furnished by trustee ... if the affidavit contains false information relating to the trustee's payment of current or past due obligations.")

[72]Andres' Mot. at 10-19.

[73]*Id*. at 10-15.

[74]*Id.* at 18-19.

27

Geis asked HUD and DBBM to disburse $1,670,053 more in Spring 2005, but those payments were never released by DBBM;[75] (4) the Bankruptcy Trustee approved additional payments to Andres' subcontractors;[76] (5) Andres received less than the actual cost of the construction work, which the Contract entitled him to.[77]

Geis provides competing evidence regarding the percentage of completion of the project as compared with the percentage of total payment drawn on the construction loan and submitted to Andres.[78]  He also argues that the facts that individual subcontractors were paid, that later payments were requested and approved by Geis and the Bankruptcy Trustee, and that Andres allegedly lost money on the job, do not mean that the project as a whole was not overdrawn.[79]

There is a variety of competing evidence before the Court on all the aforementioned factual issues.  Accordingly, issues of material fact remain as to whether Geis received reasonably equivalent value from Andres for the amounts paid to Andres.  Summary judgment is DENIED on the fraudulent conveyance claims.

## Conclusion

Geis' Motion for Summary Judgment (Docket Entry No. 54) and VDR's Motion for Summary Judgment (Docket Entry No. 55) are GRANTED IN PART and DENIED IN PART.  Summary judgment is GRANTED to Geis on Andres' fraud and fraudulent inducement claims as

---

[75]*Id.* at 19-20.

[76]*Id.* at 20-21.

[77]*Id.* at 21-22.

[78]Geis' Resp. at 4-14.

[79]*Id.* at 14.

those claims were not pled with the requisite particularity.  Summary judgment is DENIED on the issue of Geis' alter ego liability for VDR's actions.  Summary judgment is DENIED to Geis on Andres' breach of contract claims.  Summary judgment is also DENIED to Geis on Andres' tortious interference claims, as those claims are not barred by the statute of limitations.

Andres' Motion for Summary Judgment (Docket Entry No. 56) is DENIED. Summary judgment is DENIED to Andres on Geis' fraudulent conveyance claims under TUFTA and the Bankruptcy Code.  Geis' objection to Andres' proof of claim (Claim No. 7) also remains pending.

It is so ORDERED.

SIGNED this 8th day of March, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE